UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JOHN ELLIS JONES,

                Plaintiff,                Case No. 1:15-cv-252

v.                                           Honorable Paul L. Maloney

J. DRAL et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff John Ellis Jones presently is incarcerated at the Baraga Correctional Facilty, though the actions about which he complains occurred while he was jailed at the Ingham County Jail (ICJ). He sues Ingham County Deputy Sheriff J. Dral and Sergeant (unknown) Weiss.

Plaintiff alleges that, on June 2, 2012, he was involved in a fight with his bunk-mate Juan Mata. Defendant Dral was the first officer on the scene, after which she was joined by other officers, who helped her to break up the fight. Plaintiff was taken to a holding cell, where he was first interviewed by Defendant Dral and then by Investigator Robert Boerkoel. Plaintiff received a ticket for the major violation of assault, and he was penalized with 48 hours of lockdown, loss of three visits, and loss of three store orders. Plaintiff signed the ticket. Sometime later, Defendant Weiss entered the disposition into the computer, discovering that Petitioner had at least two prior tickets for fighting during the past nine months. Under ICJ policy, an inmate with more than two fights was subject to 30 days in segregation. The disposition of the ticket was corrected to show 30 days' segregation.

On June 22, 2012, Plaintiff was transferred from ICJ to the Charles Egeler Reception and Guidance Center (RGC) of the Michigan Department of Corrections (MDOC). He met with RGC employee Carla J. Wilborn. Wilborn told Plaintiff that, because of the documentation sent from ICJ, Plaintiff would be labeled as sexually aggressive and placed in single-cell housing at a maximum security prison within the MDOC. Plaintiff became "outraged" at the false accusation, denying that he had ever been sexually aggressive. (Compl., docket #1, Page ID#6.) After purportedly pursuing administrative relief from the administrative, classification and records offices, Plaintiff filed a grievance on March 25, 2013. On April 15, 2013, Plaintiff's classification was changed because the "PSI did not show any

indication of a CSC history. Therefore the screen is corrected by taking this off the form." (Step 1 Grievance Response Form, docket #1-1, Page ID#30.)

Plaintiff alleges that the classification error caused him to be a "hate target." (Compl., Page ID#7.) He alleges that prisoners would throw urine on his bed and threaten him, because he was perceived as being a homosexual predator. Plaintiff met with Psychologist Robert A. Houle on a number of occasions because the stress of prisoner harassment made him unable to eat, sleep or engage in conversation. Plaintiff alleges that Houle helped him to cope with the stress and to use techniques to manage it, and Plaintiff began to eat and sleep better. In August 2013, Plaintiff received a memorandum from Classification Director Laura Heinritz that continued his placement in a single cell because of "Prohibited Sexual Conduct Involving Prisoners." (*Id.* at 9.)

Plaintiff alleges that Defendant Dral acted with reckless indifference to his Fifth and Fourteenth Amendment rights by issuing on June 15, 2012 a special incident report containing false information, because the incident already was resolved on June 2, 2012. Plaintiff also contends that Defendant Weiss violated his due process rights by knowingly signing Dral's incident report that contained false charges. Plaintiff also complains that Defendants Dral and Weiss failed to notify him of the content of the incident report and failed to provide him with an opportunity to be heard, in violation of his rights to due process and protection from double jeopardy.

Plaintiff seeks compensatory and punitive damages, together with declaratory and injunctive relief.

**Discussion**

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person

acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff claims that Defendants Dral and Weiss deprived him of his right to due process under the Fifth and Fourteenth Amendments by issuing or signing a misconduct investigation report containing inaccurate information and by failing to provide Plaintiff notice and an opportunity to be heard on the incorrect allegations. To the extent that Defendants actually took action against Plaintiff by placing him in segregation, Plaintiff cannot demonstrate that they deprived him of a liberty interest in violation of the Due Process Clause. A convicted prisoner[1] does not have a protected liberty interest in prison or jail disciplinary proceedings unless the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486 (1995). Petitioner received a jail sanction of 30 days' segregation for fighting as a repeat assaultive offender. A sentence of 30 days' segregation does not amount to an atypical or significant hardship. *See id.* (holding that placement in solitary confinement for 30 days does not implicate a liberty interest). Because Plaintiff did not suffer an infringement of any liberty interest as a result of the misconduct charge he fails to state a claim against Defendants based on the sanction he faced at the Ingham County Jail. *See Green*, 2000 WL

---

[1]Petitioner was found guilty by a jury on April 24, 2012 of one count of breaking and entering a building with intent, MICH. COMP. LAWS § 750.110, and one count of assaulting or obstructing a police officer causing injury, MICH. COMP. LAWS § 750.81d(2). He was sentenced on those convictions on June 20, 2012. *See* Michigan Offender Tracking Information System, http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=646343. As a consequence, at the time of the misconduct in issue, June 1, 2012, Petitioner was a convicted person, not a pretrial detainee. The Court therefore has analyzed the action under the standards applicable to convicted prisoners. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (recognizing some differences in the liberty interests of pretrial detainees from those of convicted prisoners) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).

876765, at *2 ("Green had no due process liberty interest in the minor misconduct hearing because he did not allege any punishment that affected the duration of his confinement, or that constituted an atypical and significant hardship."); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999) ("Staffney suffered no loss of good time credits as a result of his minor misconduct conviction and the sanctions he received do not represent a liberty interest recognized by the constitution.").

Moreover, even if Petitioner had a due process interest in his jail misconduct proceeding, he had no such interest in the investigation report prepared by Defendant Dral and signed by Defendant Weiss. That report did not contain a finding on the issue of the alleged sexual nature of the assault. Instead, Plaintiff initially was punished solely for fighting, which Plaintiff admits doing. Further, in her June 20, 2012 report, Dral merely recorded the results of her investigation of the sexual assault claims of prisoner Juan Mata, including the substance of the interviews she conducted with numerous witnesses. The investigative report was forwarded for further investigation. Because Dral and Weiss made no determination about Plaintiff's guilt on the sexual allegations, they could not have made such a determination without due process.

To the extent that Plaintiff alleges that the substance of the jail investigative report was used by MDOC staff members to label Plaintiff a sex offender within the MDOC or to keep Plaintiff in single-cell confinement for long periods of time, he fails to demonstrate how Defendants Dral and Weiss may be held liable for the MDOC determination. The Supreme Court has stated that "§ 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" *Malley v. Briggs*, 475 U.S. 335, 345 (1986) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)), *quoted in Powers v. Hamilton Cty. Pub. Defender Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007).

"Relying on this language, courts have framed the § 1983 proximate-cause question as a matter of foreseeability, asking whether it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct." *Powers*, 501 F.3d at 609. Under this analysis, a defendant may still be proximately liable, even if an intervening third party is the immediate trigger for the plaintiff's injury, but only if the third party's actions were foreseeable. *Id.* In addition, even if it is foreseeable that a defendant's conduct will lead to the complained of harm, a defendant may be able to avoid § 1983 liability by pointing to the intervening action of a another as the proximate cause of the plaintiff's injury. *Id.* "This rule has grown out of the general tort principle that 'an intervening act of a third party, which [causes harm] after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable . . . .'" *Powers*, 501 F.3d at 610 (quoting *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing Restatement (Second) of Torts § 440–41 (1965))).

Defendants Dral and Weiss took actions solely related to Plaintiff's confinement in ICJ, where Plaintiff, by his own admission, was punished for fighting. Defendants' only actions respecting the sexual nature of the assault were to interview witnesses and prepare an investigative report. Defendants made no findings about Plaintiff's guilt. They committed no act that deprived Plaintiff of his rights. The fact that the MDOC and its officials reached their own conclusions based on the report and without providing a hearing, if true, would not be fairly attributable to Dral and Weiss, because they themselves did not deprive Plaintiff of his rights. For the same reason, the acts of the MDOC would not be foreseeable and would be a superseding cause of any injury.

Plaintiff next alleges that Defendants, by writing a report outlining the investigation of the alleged sexual assault that subsequently was forwarded to the MDOC, caused Plaintiff to be punished twice

for his offense of fighting. The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. But a person is only "twice put in jeopardy of life or limb," U.S. Const. Am. XIII, when he is placed at risk of "multiple criminal punishments for the same offense," *Hudson v. United States*, 522 U.S. 93, 99 (1997). Ordinarily, therefore, only a prior criminal prosecution or a facially punitive statute will allow a defendant to invoke the double jeopardy protection. *Hudson*, 522 U.S. at 100-01. In order to determine whether a statute providing for an administrative sanction is facially punitive, we first ask "whether the legislature . . . indicated . . . a preference for one label or the other"; if the legislature intended to impose a civil sanction, we then ask whether "the statutory scheme is so punitive ... as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Herbert*, 160 F.3d at 1136-37 (internal quotation marks omitted) (alteration in original). The federal courts repeatedly have recognized that "[t]he Double Jeopardy Clause was not intended to inhibit prison discipline, and disciplinary changes in prison conditions do not preclude subsequent criminal punishment for the same misconduct." *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008); *see also Porter v. Coughlin*, 421 F.3d 141, 145, 148 (2d Cir. 2005); *United States v. Mayes*, 158 F.3d 1215, 1224 (11th Cir. 1998); *United States v. Galan*, 82 F.3d 639, 640 (5th Cir. 1996); *Garrity v. Fiedler*, 41 F.3d 1150, 1152 (7th Cir. 1994); *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994); *United States v. Newby*, 11 F.3d 1143, 1146 (3d Cir. 1993); *Kerns v. Parratt*, 672 F.2d 690, 691-92 (8th Cir. 1982).

No basis exists for concluding that the Ingham County Jail's disciplinary policy is so punitive as to implicate the Double Jeopardy Clause. Dral and Weiss placed Plaintiff in segregation for 30 days for fighting on a third occasion. Beyond that, they completed and signed an investigation report about the

allegations of sexual assault, and they forwarded that report for further investigation. On these facts, Defendants Dral and Weiss did not punish Petitioner even once within the meaning of the Double Jeopardy Clause – much less twice. *See Simpson*, 546 F.3d at 398.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:  April 2, 2015                             /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  Chief United States District Judge